SNYDER v. NEW YORK CENTRAL RAILROAD COMPANY.

[No. 14,834. Filed March 26, 1935. Rehearing denied October 18, 1935. Transfer denied January 7, 1936.]

*Walter R. Arnold* and *Benjamin Piser,* for appellant.
*Bertrand Walker, G. A. Farabaugh, L. C. Chaplean* and *J. A. Roper,* for appellee.

CURTIS, J.—This is an action by appellant against the appellee for the alleged wrongful death of appellant's infant son.

On the 27th day of January, 1931, the appellant's seven-year-old son, Darrell Snyder, was killed by an east-bound passenger train of the appellee at what would be the crossing of a north and south street known as Baker Street and the appellee's railroad tracks in the city of Mishawaka, Indiana, had said Baker Street been extended south over said tracks.

For upwards of four years next prior to, and up to the time of the accident, this conjunction at Baker Street had been continuously used to cross over appellee's tracks by pedestrians, particularly school children, during the school sessions, attending LaSalle School, which was situated south of the railroad tracks and west of Baker Street. Up to some four years next prior to the accident the way across the tracks had been barred by a wire strung across the north line of appellee's right-of-way at Baker Street. This wire had been removed and rolled up on either side of two paths leading up to the tracks on Baker Street, and a "No trespassing" sign had been placed by the railroad company at its north right-of-way line in Baker Street. Three tracks were maintained by the appellee at this conjunction—the northernmost track was the west-bound main track, the middle track was the east-bound main track, and the southernmost a switch-track—all parallel to each other and approximately eight feet apart.

The deceased, with two other lads, were on their return to the LaSalle School from their homes about a block north of the conjunction after the noon-hour on a clear day, and paused at the switch track of the appellee while a west-bound freight train was crossing Baker Street, and the deceased and the smaller of the two boys pelted the passing freight train with pebbles, standing on the side-track south of the east bound main track. While the deceased was stooping over for a pebble, in the vicinity of the switch-track at this conjunction, the east-bound passenger train locomotive on the middle track struck and killed him. The passenger train consisted of eight coaches and its length was approximately three hundred twenty feet, and the train continued four hundred feet after it struck the deceased.

For several years there had been a basket ball standard at the conjunction of Baker Street with appellee's

north right-of-way line at the opening made by the rolled up fence. Children in the neighborhood congregated thereabout and played and watched the play of basket ball and baseball. The standard had been later moved to the west a little, but the immediate surroundings north of the appellee's right-of-way line were continuously used for recreation. A public alley, immediately south of the railroad right-of-way and paralleling it, was connected with Baker Street by the paths aforesaid.

The appellant brought this action in three paragraphs. The first paragraph was predicated upon the appellee's failure to sound warning signals, and operating the train at a speed in excess of the speed fixed by an ordinance of said city; the second paragraph was based upon careless operation of appellee's train through a playground permitted to be used as such by the appellee, in the vicinity of the right-of-way, and the failure of appellee in the operation of its train to watch for children using the grounds for that purpose; the third paragraph of complaint was founded on the doctrine of "last clear chance," the perilous position of the infant, the knowledge of the appellee, and failure to stop its train before striking him. The complaint was answered in general denial and the cause submitted for trial before a jury.

At the conclusion of the appellant's evidence in chief the court directed the jury to return a verdict for the appellee, to which action of the court the appellant excepted, and a verdict was rendered according to the direction. Judgment on the verdict was followed by a motion for new trial. This motion was overruled and from that ruling this appeal is prosecuted.

The sole error assigned is that the trial court erred in overruling the appellant's motion for a new trial, and upon that action of the court the appellant relies for

reversal on each of the grounds set forth in the motion. The causes or grounds of the motion may be summarized as follows: (1) Error in directing the jury at the conclusion of appellant's case to return a verdict for the appellee. (2) The verdict of the jury was not sustained by sufficient evidence and contrary to law. (3) Error of the court in the trial of the cause in striking from the record and withdrawing from the consideration of the jury certain items of evidence given by the appellant. (4) Error of the court in rejecting certain items of evidence offered by the appellant.

The first paragraph of the complaint alleged in substance: that on January 27, 1931, the appellee operated a railroad through the city of Mishawaka, Indiana, which crossed Baker Street; appellant's infant son, Darrel Snyder, age seven years, while in the act of crossing said railroad of the appellee at South Baker Street crossing, was killed by appellee's negligent, careless and reckless operation against said child of a passenger train operated on said track, traveling at a speed in excess of twenty-five miles per hour, without making any signal or warning of its approach, and in violation of Section 109 of the ordinances of the city of Mishawaka, Indiana, providing that "No person shall run a locomotive or steam railway car faster than twenty-five miles per hour within the city of Mishawaka," thereby mangling the body of said child and killing him, to appellant's damage in the sum of $10,000.00.

The second paragraph of the complaint alleged the same facts aforesaid and that at or near the crossing of the street with appellee's tracks, appellee had, on the 27th day of January, 1931, and for some time prior thereto, permitted the maintenance of a basket ball standard at said crossing, which induced and attracted boys to be at such place, and the appellee knew, or should have known, that children were gathering and

playing under the standard and near said crossing at said time and of the danger from passing trains to children congregating about said basket ball standard; that appellant's decedent was attracted to said standard, and unappreciative of the dangers attendant upon his being there, and the appellee knowing of the attraction of children in and about the standard and at such crossing, without making any effort to discover whether children were playing and gathering in and about said crossing, failed to keep a reasonable lookout to discover the appellant's decedent and ran its engine and cars upon and over said infant, crushing out its life, to appellant's damage in the sum of $10,000.00.

The third paragraph of the complaint averred the same facts mentioned in the first paragraph alleging also that while said infant was crossing the tracks of appellee at Baker Street in the city of Mishawaka, the appellee approached the said crossing without sounding any whistle or ringing any bell, without giving any warning, at a speed in excess of the twenty-five miles per hour as fixed by the ordinance and failed to have a flagman or signs or signals or give warning of any nature at said crossing, and said infant met its death at said crossing because of failure to sound said signals; that to appellee's knowledge a large number of children habitually used said crossing and in the circumstances the appellee was required, in the exercise of prudence, to maintain some signal device of some sort to give warning and notice to people, particularly infants traveling in, over and about said crossing of the approach of trains and over and toward the same; that at said point where said railroad crossed said South Baker Street, men, women, and children were constantly walking, passing and repassing along and over appellee's railroad track, and by reason thereof, required the appellee, in the exercise of care, to keep

a reasonable lookout for such persons as might reasonably be expected to be on, or dangerously near to, and about the said crossing and about its tracks near said crossing, to discover and avoid injuring such persons; that said decedent was upon, along, or across the aforesaid portion of said railroad tracks, at or near the intersection of South Baker Street, in a position of danger with respect to appellee's train then approaching said crossing, and notwithstanding the appellee, in the exercise of ordinary prudence, care, and judgment, should have seen that the said infant was not able to extricate himself from a perilous position in which he was then placed, and that if appellee continued to proceed with said train the said train would come in contact with and strike said infant, the appellee proceeded with said steam engine and train and had full, continuous, nonobstructed view of said infant upon said railroad track and after the said infant was dangerously near to and getting upon the same, and continued to proceed with said engine and train and carelessly and negligently failed to discharge its duty aforesaid, and used no care whatsoever but continued to proceed with said engine and train toward said infant, the said infant being plainly visible to said appellee, the said engineer continued to proceed with said engine at more than twenty-five miles per hour, with the infant in plain view and his peril known and visible to the appellee, and failed to act to avoid striking and injuring him and as a direct consequence appellee did strike the said infant, killing the said infant, to appellant's damage in the sum of $10,000.00.

It is the evidence most favorable to the appellant which we must consider inasmuch as the trial court directed a verdict in favor of the appellee at the close of appellant's evidence. It shows that the deceased lived with his parents at the corner of

Baker and Fourth Streets in the city of Mishawaka, Indiana, something more than a block north of the place where the accident occurred; that he was a normal boy seven years of age and attended LaSalle School, which is about six or seven blocks west and about four or five blocks south of where he lived. He usually went west on Fourth Street about three blocks to Logan Street and then south across the appellee's right-of-way and tracks at that public crossing and then on to school. On one or two previous occasions he had gone over the route he traveled on the day of the accident but had been scolded by his parents for so doing.

The accident occurred not at an established street crossing but at or near the place where Baker Street if extended south would cross the right-of-way and tracks of the appellee, the exact place of the accident being at or near where said street if so extended south would cross the middle or east-bound track (No. 2) of the appellee. The deceased, as indicated before, was on his way back to school after his noon lunch at home, and had entered upon the right-of-way of the appellee from the north at the end of Baker Street in company with two other school boy companions who were brothers aged seven and nine years. While there may be some slight confusion in the evidence (due most likely to the immature ages of these two boys who were the closest eye witnesses) as to just what these three boys did during the few seconds immediately preceding the accident, we think it clear that they all three first crossed the north tracks of the appellee which was the main west-bound track and then proceeded south a distance of about eight feet and then crossed the second or middle track of the appellee, which was the main east-bound track (track No. 2) and then proceeded south about eight feet to the south tracks of the appellee, which was the switch track, and then they all three went a little

distance west on the switch track. The older boy then went south a few feet to the alley heretofore mentioned and the deceased and the younger boy stopped on the switch track to throw stones at the freight train of the appellee, which was then going westward on said north main track. The older of the two boys saw the approach of the east-bound train, which was the one that struck the deceased, and called to his younger brother, who likewise called to the deceased to warn him of the danger. The deceased kept on throwing stones several times at the freight train and as he stooped to pick up a stone to throw he was struck and killed by appellee's said train which was on the east-bound (middle track) going east. There was some evidence from which it could be inferred that the deceased, as he was throwing the stones at the freight train, went north toward the middle track. But the older boy testified that "he did not see Darrell go on that track No. 2 at all." Other evidence would have him standing still while throwing the stones. The fact remains that he either went upon or went into such close proximity to said track as to be struck by the train thereon. The freight train going west was still going by when the deceased was struck by the said east-bound train.

There is no evidence to show that the passage way south from the end of Baker Street onto and over said right-of-way and tracks was used by others than pedestrians as above set forth. Neither is there any evidence that the appellee had anything whatever to do with either the establishment or the maintenance of the said playground north of its right-of-way near the end of Baker Street. At the exact time of the accident and for a few seconds prior thereto all witnesses are agreed that the bell on the engine that struck the deceased was ringing. The evidence is in dispute as to other signals such as whistling, and such being the state of the evi-

dence we are required to conclude that no whistle or other warning signal except the bell was sounded by the appellee. There is no evidence that the train that struck the deceased was moving faster than the speed allowed by the ordinance set out heretofore. The appellant's witness Bertha Wright placed the speed of the train at not more than fifteen miles per hour. She is the only witness who testified as to the speed of the train that struck the deceased. The evidence as to when the engineer saw the deceased and under what circumstances he saw him is as follows: He was called as a witness by the appellant. He testified that westward from the place where the accident occurred the track was straight and level for approximately one and one-half miles; that the weather was clear; that at about the time the engine reached Logan Street crossing, which was three blocks west from the place of the accident, he saw a group of boys beyond Cleveland Street at or near Baker Street; that he kept a lookout all the time; that there were eight coaches attached to his train whose exact length he did not know; that he had used a certain amount of his air in previously slowing the train down and that in making an emergency stop under all of the conditions that then and there existed it required approximately 200 feet. He was not asked the question and gave no evidence on the speed of the train. A hypothetical question asked him was based on a speed of twenty to twenty-five miles per hour. He was asked no question and gave no evidence whatever as to whether or not he at any time saw the deceased on the track of his train or in a place of danger or in a position of peril. His only evidence in that respect was that when his train was near the Logan Street crossing he "saw a group of boys beyond Baker Street— or beyond Cleveland Street" and continued to see them

on approaching Cleveland Street, which was the first street west of Baker Street.

The second paragraph of the complaint was based upon the theory of attractive nuisance, that is, that the appellee permitted the maintenance of the basket ball standard and playground heretofore mentioned and that it attracted the deceased to the place of his injury. But it is to be remembered that the deceased was on his way to school at the time of the accident. There is no evidence to show that the said basket ball standard or playground had even a remote connection with the accident and no evidence whatever that the deceased was attracted to the place of his injury by the standard or playground. Neither is there any evidence even tending to prove or even suggesting that the appellee had anything whatever to do with the establishment or maintenance of the standard or playground in question. There was certainly no evidence to sustain the allegations of the second paragraph of the complaint. The court withdrew from the consideration of the jury evidence in relation to the said use of the said playground for athletic purposes for several years preceding the date of the accident. This action of the court is made the subject of the fourth cause of the motion for a new trial. In view of what has been previously said there was no error in that action. We think it can be safely said that as a general proposition in Indiana the attractive nuisance doctrine has not been extended to cover the situation disclosed by the evidence in the instant case. The early history of the doctrine, originating in the English case of *Lynch* v. *Nurdin* (1841), 1 Q. B. 29, is interesting. It received early sanction in our courts in what is termed the "turntable cases," so called because the first leading American case involved an injury to a child that was playing about a railroad turntable. See *Sioux*

*City, etc., R. Co.* v. *Stout* (1873), 17 Wall (U. S.) 657, 21 L. Ed. 745. The tendency for a time was to extend the doctrine liberally but on the other hand it has been rejected in many jurisdictions. It seems to us from an examination of many authorities, including those of our own state, that the modern trend is to limit the doctrine rather than to extend it and to apply it cautiously.

See: *Cleveland, etc., R. R. Co.* v. *Means* (1915), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375. See also, Corpus Juris, Vol. 45, page 758, etc.; *Wheeling, etc., R. Co.* v. *Harvey* (1907), 77 Ohio St. 235, 83 N. E. 66.

We believe the doctrine of attractive nuisance must be eliminated from our further consideration in this case. We are then brought to the question as to whether or not, under the doctrine of last clear chance, relied upon in the third paragraph of the complaint, not complicated by any doctrine of attractive nuisance, there is any competent evidence or legitimate inferences to be drawn from such evidence in the instant case requiring a submission of that question or issue to the jury. If there was such evidence upon that question and issue which raised a question of fact in reference thereto, then the province of the jury was invaded by the trial court in the giving of said peremptory instruction complained of; otherwise the action of the trial court in the giving of said peremptory instruction, insofar as the third paragraph of the complaint is concerned, must be upheld by the court. We proceed to a determination of such matter.

Speaking generally of the doctrine of last clear chance this court, in the case of *Heldt* v. *Thompson* (1927), 86 Ind. App. 270, 271, 157 N. E. 60, well said: "The last clear chance contemplates a known peril which can be avoided by due care, not a peril which might have been avoided by due care, not a peril which might have been known by the exercise of due care. In other words, it

is the negligent failure to avoid a discovered peril that makes applicable the rule of last clear chance."

See also: *Terre Haute, etc., Traction Co.* v. *Stevenson* (1920), 189 Ind. 100, 123 N. E. 785; *Pittsburgh, etc., R. Co.* v. *Lambert* (1922), 79 Ind. App. 133, 137 N. E. 560; *Indianapolis Traction, etc., Co.* v. *Croly* (1914), 55 Ind. App. 543, 104 N. E. 328. This last case grows out of the same occurrence as that involved in a case by the same name in 54 Ind. App. 566, 96 N. E. 973, and the language used in the latter case was explained in the former. Extreme care should be used in not being misled by some of the expressions used in the case in the 54th appellate, *supra,* concerning the knowledge of the motorman or that *"by reasonable care on his part could have known that said child was in danger, etc."* We quote from the 189 Ind., *supra,* as follows (p. 105):

"The traveler's peril known to the motorman creates a special duty to take advantage of his chance, if he have a chance. This duty to avoid a collision continues so long as the peril continues. When a traveler is in a perilous situation resulting from his own negligence, and the peril is known to the motorman, in time to clearly afford an opportunity to avoid injuring the one in peril, his duty to use the chance arises and continues while the peril lasts, whether the negligence of the traveler continues or is concurrent, or whether the traveler becomes duly, though ineffectively diligent. Neither concurrence nor continuance of the traveler's negligence alone is a defense when the motorman has a last clear chance to avoid the injury by due diligence after the discovery of the peril. Such continuance of the negligence of the traveler would be a defense if the motorman did not know of the peril thereby created, though the motorman was at the time negligent in not knowing. No special duty to use due care in favor of a particular party arises without actual notice of the particular party's peril. A general duty exists, in the absence of such actual knowledge, to use due care for the protection

generally of parties who may or may not be in danger at crossings, but are not known to be in danger, and contributory negligence is a defense when this general, and not a specific, duty of the motorman is violated."

See also the cases cited in the above case as to the knowledge required to set in motion the doctrine of last clear chance. Applying the principles of law in relation to the last clear chance rule as laid down by our decisions to the instant case we find that there is no evidence whatever that the engineer of appellee's train ever saw the deceased on the railroad track upon which his train was running or in a place of danger or peril as the train approached. The engineer's evidence was the only evidence upon that subject. Upon the undisputed facts the trial court's ruling as to the last clear chance, which was necessarily involved in the giving of the said peremptory instruction, was correct, unless it may be said that the fact that the deceased was a young child seven years of age and *non sui juris* coupled with the other facts as to the use by the public of this part of appellee's right-of-way and tracks as a crossing by pedestrians for a long period of time as disclosed by the evidence would operate to change the rule of law which we have heretofore set forth, as to the last clear chance, where such a child is involved. This question has been somewhat recently before this court in the case of *Holstine* v. *Director General of Railroads* (1922), 77 Ind. App. 582, 134 N. E. 303, and was there so exhaustively considered that we do not feel called upon again to reiterate the principles there laid down. We fully approve of what was said in that opinion insofar as it is applicable to the instant case. It is in line with the more recent decisions of the Supreme Court and this court. See also the many authorities cited therein. The Means case, *supra,* relied upon by the appellant, had in it an alleged attractive nuisance,

to wit, wheat which had leaked from the cars of the defendant company upon its right-of-way and allowed to remain there a long period of time at a place well calculated to attract the five-year-old child who was actually attracted to the place of his injury by the said alleged attractive nuisance. There the alleged attractive nuisance was actually upon the right-of-way of the defendant therein. There is nothing which we have discovered in the instant case to take it out of the general principles of law announced in the Holstine case, *supra*. Since the deceased was a trespasser or at best a mere licensee we are satisfied that even though he was an infant seven years of age no higher care was required of the appellee than that exercised by it as shown by the uncontradicted evidence.

Causes 3, 5, and 6 of the motion for a new trial each relate to rulings of the trial court adverse to the appellant in the matter of evidence as to the use of the railroad company's right-of-way and tracks at the place of the accident as a passage way by the public even though it was not a regular public crossing. Much evidence on that question was admitted and remained in the record after said complained of rulings were made. We have carefully examined all of the offers to prove made in relation to such evidence as to such use and in our opinion all offers to prove related to evidence that would, at most, be cumulative. Under such circumstances we think no reversible error was made in said rulings even though such evidence might have been competent. See: *Boxell* v. *Bright National Bank* (1916), 184 Ind. 631, 112 N. E. 3; *American Maize Products Co.* v. *Widiger* (1917), 186 Ind. 227, 114 N. E. 457; *Koehler* v. *Harman* (1913), 52 Ind. App. 315, 98 N. E. 1009; *Home Ins. Co.* v. *Strange* (1919), 70 Ind. App. 49, 123 N. E. 28, 123 N. E. 127; *Lahr* v. *Broyles* (1927), 86 Ind. App. 33, 155 N. E. 709.

The conclusive evidence is that the train which struck the deceased was traveling at the rate of not more than fifteen miles per hour and that the bell on the engine was ringing and that the engineer kept a continuous lookout. The ordinance pleaded allowed a speed of not to exceed twenty-five miles per hour. The allegations of negligence contained in the first paragraph of the complaint were entirely unsustained by the evidence.

While we recognize that the action of the trial court in the giving of a peremptory instruction in such a case as the instant one is an action carefully to be considered and not to be indulged except in a clear case, yet when the clear case presents itself then it becomes the court's duty to so act. We believe there is no reversible error shown.

The judgment is affirmed.